UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GERMAN BUNAY and EDWARD GARCIA, individually
and on behalf of all others similarly situated,

                 Plaintiffs,

             -against-

NEW YORK ENVIRONMENTAL SYSTEMS, INC.,
AWL INDUSTRIES, INC., ROBERT PAVLOVICH, and
RALPH SEVERINO,

                 Defendants.
------------------------------------------------------------------------X

CIVIL ACTION NO.


COLLECTIVE AND
CLASS ACTION
COMPLAINT

      Plaintiffs German Bunay and Edward Garcia, individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, New York Environmental Systems, Inc. ("NYES"), AWL Industries, Inc. ("AWL") (NYES and AWL together are referred to herein as "Corporate Defendants"), Robert Pavlovich, and Ralph Severino (Pavlovich and Severino together are referred to herein as "Individual Defendants," and Corporate Defendants and Individual Defendants are referred to collectively as "Defendants"), respectfully allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

1.    This action seeks equitable and legal relief on behalf of Plaintiffs for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the New York Labor Law ("NYLL") §§ 190 *et seq.*; NYLL § 740; and the Internal Revenue Code, 26 U.S.C. § 7434; and for breach of contract.

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this is an action arising under the FLSA and 26 U.S.C. § 7434.

3.     This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

**II. Parties**

5.     Plaintiffs are individuals residing in the State of New York.

6.     At all relevant times, Plaintiffs were employed by Defendants.

7.     While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

8.     Plaintiffs are covered employees within the meaning of the NYLL. Garcia is also a covered employee within the meaning of the FLSA.

9.     NYES is a domestic corporation with its principal place of business located at 368 Richardson Avenue, Brooklyn, New York 11222.

10.    AWL is a domestic corporation with its principal place of business located at 460 Morgan Avenue, Brooklyn, New York 11222.

11.    Corporate Defendants are covered employers within the meaning of the FLSA and NYLL and, at all relevant times, employed Plaintiffs.

12.    At all relevant times, Corporate Defendants had common employees and equipment, and shared payroll practices.

13. Corporate Defendants are a single enterprise and/or joint employers who jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs and are jointly and severally liable in this matter.

14. Upon information and belief, Pavlovich and Severino are individuals residing in the State of New York.

15. At all relevant times, Individual Defendants were and still are owners, officers, directors, and/or persons in control of the Corporate Defendants, who exercised significant control over the Corporate Defendants' operations and had the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records.

16. Individual Defendants directly managed, handled, or were responsible for managing and handling payroll and issuing Plaintiffs' wages.

17. At all relevant times, Individual Defendants exercised sufficient control over Plaintiffs' day-to-day operations and are considered their employers under the FLSA and NYLL.

18. Defendants operate in interstate commerce, and their revenues are in excess of the minimum required to fall within the jurisdiction of the FLSA.

19. Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

20. The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Garcia on behalf of himself and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint, and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

21.   The FLSA Collective Plaintiffs consist of not less than four hundred (400) similarly situated current and former employees of Defendants who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime compensation.

22.   As part of their regular business practices, Defendants intentionally, willfully, and repeatedly harmed Garcia and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to provide their employees with overtime compensation for all hours worked in excess of forty (40) per week.

23.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

24.   Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Garcia and the FLSA Collective Plaintiffs.

25.   The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

**IV. Rule 23 Class Allegations**

26.   Plaintiffs bring the Second, Third, Fourth, Fifth, and Sixth Causes of Action in this Complaint on behalf of themselves and similarly situated persons who were employed by Defendants since the date six (6) years prior to the filing of this Complaint pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23.

27.  Bunay brings the Eighth Cause of Action in this Complaint pursuant to Fed. R. Civ. P. 23 on behalf of himself and similarly situated persons for whom Defendants filed information returns since the date (6) years prior to the filing of this Complaint

28.  All said persons are referred to herein as the "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

29.  The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts from which to calculate that number are presently within the sole control of Defendants, upon information and belief, there are no less than four hundred (400) members in the Class.

30.  Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, including but not limited to the failure to pay overtime compensation and the filing of fraudulent information returns. Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

31.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests adverse to the Class. Plaintiffs are represented by attorneys who are experienced and competent in employment and wage and hour litigation and class action litigation and have many times previously represented plaintiffs in wage and hour cases.

32.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against Defendants.

33.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

34.    Because the losses, injuries, and damages suffered by each of the individual Class Members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.

35. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

36. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendants failed to compensate Class Members at the applicable prevailing wage rates of pay;

b. Whether Defendants failed to compensate Class Members at the applicable overtime rate for hours worked over forty (40) hours per week, in violation of the N.Y. Comp. Codes R. & Regs. ("NYCRR") Tit. 12 § 142-3.2;

c. Whether Defendants' failure to pay Class Members their earned wages constitutes a violation of NYLL § 191;

d. Whether Defendants failed to furnish accurate wage statements to Class Members;

e. Whether Defendants failed to furnish wage notices to Class Members;

f.   Whether Defendants filed fraudulent information returns with the IRS as to Class Members;

g.   Whether Defendants' violations of the Internal Revenue Code were willful;

h.   Whether Class Members are entitled to damages, and if so, the means of measuring such damages;

i.   Whether Defendants are liable for Class Members' attorneys' fees and costs; and

j.   Whether Defendants are liable for liquidated damages.

## V.    Factual Allegations

### *German Bunay*

38.   Defendants employed Bunay as an asbestos handler from in or around December 2006 until on or around June 28, 2020.[1]

39.   Bunay's job duties as an asbestos handler included, *inter alia*, identifying, neutralizing, and overseeing the removal and disposal of hazardous waste from buildings and structures, including asbestos, mold, lead, and contaminated soil; operating company vehicles to and from worksites to help pack, transport, store and/or dispose of work materials; and executing electrical work, including connecting and disconnecting circuit breakers, panels, conduits, wiring, and related equipment and appliances.

40.   Bunay was also required to report at NYES every morning, load the company vehicle with all necessary equipment, drive the company vehicle to the worksite at the start of each work day, drive the company vehicle back to NYES, help unload all equipment from the company vehicle, and store the company vehicle in a garage at the end of each workday ("Preparation Work").

---

[1] Bunay did not work for Defendants from on or around March 13, 2020, until on or around April 26, 2020, due to a surgical procedure and the temporary closure of NYES as a result of the COVID-19 pandemic.

*Work Schedule:*

41. Throughout his employment with Defendants, Bunay regularly worked 6 days per week, as follows: Mondays through Fridays from approximately 8:00 a.m. to 4:00 p.m.; and either Saturdays from approximately 8:00 a.m. to 4:00 p.m.; or Sundays from approximately 10:00 p.m. to 6:00 a.m., with paid daily breaks of approximately thirty (30) minutes per day, for a total of forty-five (45) hours worked per week (the "Regular Work Schedule").

42. In addition to the Regular Work Schedule, Bunay also spent an additional three (3) hours per weekday performing Preparation Work; and an additional three (3) hours of Preparation Work on Saturdays or two (2) to three (3) hours of Preparation Work on Sundays, resulting in an additional seventeen and a half (17.5) to eighteen (18) hours worked per week.

43. As a result, Bunay worked approximately sixty-two-and-a-half (62.5) to sixty-three (63) hours per week during his employment with Defendants.

44. Throughout Bunay's employment, Defendants required Bunay to track his own work hours by filling out a timesheet.

45. However, Defendants required Bunay to record no more than two (2) hours of Preparation Work per day. Therefore, even though he worked approximately sixty-two-and-a-half (62.5) to sixty-three (63) hours per week, he was only permitted to record sixty (60) hours per week.

46. Bunay repeatedly complained to Severino that he was not being paid for all hours he spent performing Preparation Work; however, Severino responded that Bunay should be

satisfied with the wages he received; that such conversations "aggravated" Severino; and that Bunay was a "thirsty motherf***er" for seeking payment of his overtime wages.

*Rates of Pay and Frequency of Pay:*

47. From the start of his employment with Defendants until in or around December 2013, Defendants paid Bunay $35.00 per hour for up to forty (40) hours per week; at a rate of $52.50 per hour for a maximum of eight (8) additional hours of non-Preparation work per week; and at a rate of $25.00 per hour for up to ten (10) hours of Preparation Work performed per week. Defendants did not pay Bunay any compensation for all remaining hours he worked per week.

48. From in or around January 2014 until in or around December 2015, Defendants paid Bunay $40.00 per hour for up to forty (40) hours per week; at a rate of $60.00 per hour for a maximum of eight (8) additional hours of work per week; and at a rate of $25.00 per hour for up to ten (10) hours of Preparation Work performed per week. Defendants did not pay Bunay any compensation for all remaining hours he worked per week.

49. From in or around January 2016 until in or around December 2016, Defendants paid Bunay $42.00 per hour for up to forty (40) hours per week; at a rate of $63.00 per hour for a maximum of eight (8) additional hours of work per week; and at a rate of $25.00 per hour for up to ten (10) hours of Preparation Work performed per week. Defendants did not pay Bunay any compensation for all remaining hours he worked per week.

50. From in or around January 2017 until in or around December 2019, Defendants paid Bunay $44.00 per hour for up to forty (40) hours per week; at a rate of $66.00 per hour for a maximum of eight (8) additional hours of work per week; and at a rate of $25.00 per

hour for up to ten (10) hours of Preparation Work performed per week. Defendants did not pay Bunay any compensation for all remaining hours he worked per week.

51.     From in or around January 2020 until on or around June 28, 2020, Defendants paid Bunay $44.00 per hour for up to forty (40) hours per week; at a rate of $66.00 per hour for a maximum of eight (8) additional hours of work per week; and at a rate of $66.00 per hour for up to ten (10) hours of Preparation Work performed per week. Defendants did not pay Bunay any compensation for all remaining hours he worked per week.

52.     During the relevant period, Defendants failed to timely pay Bunay all of his earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

53.     Defendants regularly delayed the payment of Bunay's wages for Preparation Work by two (2) to four (4) weeks.

54.     Defendants' delayed payments injured Bunay by depriving him of the time value of his wages, including investing, earning interest, or otherwise using his wages.

*Fraudulent Filing of Information Returns:*

55.     Throughout Bunay's employment with Defendants, Defendants paid Bunay's wages for Preparation Work via a company check bearing a "reimbursement" notation (the "Reimbursement Checks") and for other hours worked by a separate company check.

56.     Defendants issued Internal Revenue Service ("IRS") W-2 Forms to Bunay for the tax years 2006 through 2020 that did not reflect any wages paid through Reimbursement Checks.

57.     As a result, the W-2 Forms Defendants issued to Bunay for the tax years 2006 through 2020 did not reflect all wages that Defendants paid to Bunay during each such year.

58.    Defendants filed the W-2 Forms issued to Bunay for the tax years 2006 through 2020 with the IRS.

59.    Defendants willfully filed false information returns with the IRS related to Bunay's wages each year from 2006 through 2020, in violation of 26 U.S.C. § 7434.

*Retaliation:*

60.    Throughout Bunay's employment, the City and State of New York contracted with Corporate Defendants for various lead and asbestos removal projects.

61.    NYES submitted invoices to multiple New York City and New York State agencies, seeking reimbursement for regular and overtime wages that they purportedly disbursed to NYES employees. However, on various occasions, NYES explicitly instructed its employees not to engage in projects funded by government agencies and for which NYES had received funding to cover employees' wages. Instead of distributing these reported wages to employees, NYES retained at least a portion of these funds for its own use.

62.    For instance, in or around March 2018, Severino contacted Bunay, demanding that he certify the removal of several bags of waste from Catskills Regional Medical Center. Bunay explained that the removal of said materials never occurred, clarified that the work that he and other employees actually performed was unrelated to Severino's assertions, and refused to produce a written statement to the contrary.

63.    Severino stated that Bunay's refusal to certify the performance of a contract between Defendants and New York government agencies constrained Defendants' ability to bill the State and/or City of New York for amounts that Defendants expected to obtain.

64.    Upon Bunay's refusal to provide a fraudulent certification, Severino suspended Bunay for two (2) weeks and instructed him to conform to Defendants' fraudulent practices or face termination.

65.    In or around May 2019, Severino demanded that Bunay to sign verification forms falsely alleging to have overseen a lead removal project for the New York City Police Department and to have received payments for the project.

66.    Although Bunay offered to visit the worksite, conduct a proper examination, and produce an accurate report, Severino rejected Bunay's offer and barred Bunay from participating in the oversight of the removal project, citing his preference not to waste financial resources on Bunay's wages.

67.    Bunay's refusal to sign the fraudulent verification form resulted in another two (2) week suspension. During that period, Bunay frequently contacted Defendants' office and requested to be reinstated. Severino's assistants, Gladys Jiménez and Branca Matic, who conveyed Severino's messages to Bunay, responded by saying that "[Bunay] was aware of what he needed to do" to resume working for NYES, implying that Bunay's fraudulent verification was a prerequisite for reinstatement.

68.    Defendants retaliated against Bunay in violation of NYLL § 740.

### Edward Garcia

69.    Defendants employed Garcia as an asbestos handler and fire watch from on or around January 1, 2022, until on or around July 8, 2022.

70.    Garcia's job duties included, *inter alia*, identifying, neutralizing, and overseeing the removal and disposal of hazardous waste from buildings and structures, including asbestos, mold, lead, and contaminated soil; maintaining daily records of worksite

employees' arrival and departure times; executing electrical work, including connecting and disconnecting circuit breakers, panels, conduits, wiring, and related equipment and appliances; and observing hot work activity for the detection of, and response to, fires during hot work operations.

*Work Schedule:*

71.    Throughout Garcia's employment, Garcia regularly worked 5 days per week, as follows: Mondays through Fridays from approximately 8:00 a.m. to approximately 4:30 p.m., for a total of approximately forty-two and one-half (42.5) hours per week.

72.    Occasionally, Garcia worked weeks during which the majority of his daily shifts started at approximately 7:00 a.m. and ended at approximately 5:30 p.m. or slightly later, for a total of approximately fifty-two and one-half (52.5) hours per week.

73.    In addition to the aforementioned work hours, Garcia worked twice per month, either on Saturday or Sunday, from approximately 12:00 a.m. to 7:00 a.m., for a total of approximately forty-nine and one-half (49.5) hours per week.

74.    During the weeks in which Garcia worked a weekend day and his weekday shifts started at approximately 7:00 a.m. and ended at approximately 5:30 p.m. or slightly later, he worked a total of approximately fifty-nine and one-half (59.5) hours per week.

75.    Throughout his employment, Garcia was afforded daily thirty (30)-minute paid breaks.

76.    Throughout Garcia's employment, Defendants required Garcia to track his own work hours by filling out a timesheet.

*Rates of Pay and Frequency of Pay:*

77.    In weeks during which Garcia worked in excess of forty-nine and one-half (49.5) hours per week, Defendants compensated Garcia for some overtime hours worked from

Monday through Friday, but he was reprimanded if he reported more than ten (10) overtime hours worked per week. Consequently, Garcia was not paid overtime wages during weeks in which he worked more than forty-nine and one-half (49.5) hours per week.

78.    Furthermore, in weeks during which Garcia worked weekends, he was paid at the regular rate for all weekend hours worked.

79.    Throughout his employment, Defendants paid Garcia $50.00 per hour for up to forty (40) hours worked per week and at a rate of $75.00 per hour for up to ten (10) overtime hours worked per week from Monday through Friday.

80.    During weeks in which Garcia worked Saturdays or Sundays in addition to forty (40) or more hours on weekdays, Defendants paid Garcia his regular rate of $50.00 per hour instead of the overtime rate of $75.00 per hour.

81.    During the relevant period, Defendants failed to timely pay Garcia all of his earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

82.    Specifically, whenever Garcia reported working more than eight (8) hours per day, Defendants delayed the payment of Garcia's wages by one (1) to two (2) weeks.

83.    Defendants' delayed payments injured Garcia by depriving him of the time value of his wages, including investing, earning interest, or otherwise using his wages.

### *All Plaintiffs*

*Failure to Pay Prevailing Wages*

84.    At all relevant times, Defendants entered into contracts, as either subcontractors or prime contractors, with the City of New York, the State of New York, public benefit

corporations, municipal corporations, townships or commissions appointed pursuant to law, and/or with prime contractors not currently known, to furnish labor, material, and equipment to perform work on public works projects.

85.    The public works contracts, as a matter of fact or by operation of law, required that Defendants pay and ensure payment of the prevailing rates of wages and supplements to all workers furnishing labor on the sites of the public works projects, including their direct employees and all other persons furnishing labor on the sites of the public works projects.

86.    The public works contracts also provided, as a matter of fact, or by operation of law, that any subcontracts Defendants entered into contain language requiring the payment of prevailing rates of wages and supplements to all workers furnishing labor on the sites of the public works projects.

87.    As required by law, a schedule containing prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and similarly situated employees should have been annexed to and formed a part of the public works contracts. If not annexed to the public works contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

88.    The promise to pay and ensure payment of the prevailing wage and supplemental benefit rates in the public works contracts was made for the benefit of all workers furnishing labor on the sites of the public works projects and, as such, the workers furnishing labor on the sites of the public works projects are the beneficiaries of that promise and the contracts entered into between Defendants and public entities.

89.   At all relevant times, Plaintiffs and similarly situated employees worked on various public works projects, including but not limited to public school buildings, public housing buildings, hospitals, police department buildings, and airports. Projects included asbestos and lead abatement at various locations, including, *inter alia*, La Guardia Airport, John F. Kennedy Airport, Port Authority terminals, MTA facilities, NYCHA buildings, and NYC Health & Hospitals.

90.   In furtherance of the public works contracts entered into by Defendants, Plaintiffs and similarly situated employees performed work including, but not limited to, loading company trucks with work materials and tools, as well as removing and disposing of hazardous waste such as asbestos, mold, lead, and contaminated soil from public buildings and structures.

91.   Plaintiffs and similarly situated employees were not paid at the prevailing wage rate for all hours worked on public works projects.

92.   Moreover, Defendants failed to compensate Plaintiffs and similarly situated employees with overtime wages at a rate of one and one-half (1.5) times the prevailing wage rate for all hours worked in excess of forty (40) per week at public works projects.

93.   Defendants knew that their public works project contracts required them to pay their employees, including Plaintiffs and similarly situated employees, at the prevailing wage rate for each hour worked at public works projects and at a rate of one and one-half times the prevailing wage rate for all hours worked in excess of forty (40) per week at public works projects.

94.   However, for all work performed by Plaintiffs and similarly situated employees for Defendants on public works projects, Defendants willfully failed to pay Plaintiffs and

similarly situated employees the prevailing rates of wages, overtime wages at a rate of one and one-half (1.5) times the prevailing wage rate, and supplements to which they were entitled.

*Uncompensated Work Time*

95.    At all relevant times, Plaintiffs and similarly situated employees were non-exempt employees pursuant to the FLSA and the NYLL and were entitled to overtime compensation for all hours worked in excess of forty (40) per week.

96.    Defendants violated federal and state law by willfully failing to pay Plaintiffs and similarly situated employees overtime compensation. Despite routinely working more than forty (40) hours per week, Plaintiffs and similarly situated employees were not paid overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for all the hours they worked in excess of forty (40) per week.

97.    Defendants also failed to pay Plaintiffs' wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned. Defendants willfully and routinely delayed payment of wages owed to Plaintiffs and similarly situated employees by one (1) to four (4) weeks.

98.    Defendants' delayed payments injured Plaintiffs and similarly situated employees by depriving them of the time value of their wages, including investing, earning interest, or otherwise using their wages.

*Failure to Provide Wage Notices and Accurate Wage Statements*

99.    Defendants failed to furnish to Plaintiffs and similarly situated employees a payroll notice at the time of their hire, or at any time thereafter, containing Plaintiffs' rates of pay, the designated payday, or other information required by NYLL § 195(1).

100.    Defendants also failed to furnish to Plaintiffs and similarly situated employees, with each wage payment, an accurate statement listing Plaintiffs' regular and overtime rates of pay and the number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

101.    By failing to provide Plaintiffs and similarly situated employees with complete and accurate payroll notices and wage statements as required by NYLL §§ 195(1) and (3), Defendants deprived Plaintiffs and similarly situated employees of their statutory rights to be provided with concrete information about the terms and conditions of their compensation, including their correct regular rate of pay, their correct overtime rate, the amount of compensation paid for regular work hours, and the amount of compensation paid for overtime hours.

102.    Defendants' failure to provide Plaintiffs and similarly situated employees with such information caused Plaintiffs and similarly situated employees to endure uncertainty regarding their wages and hindered their ability to take action to correct Defendants' wage and hour violations as Defendants deprived Plaintiffs and similarly situated employees of the means to confirm that they were being compensated in accordance with the terms of their employment and with the requirements of federal and state law.

103.    As a result, Defendants injured Plaintiffs and similarly situated employees by denying them the right to complete and accurate information about terms of their compensation, which resulted in the underpayment of their wages.

**<u>AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF GARCIA AND THE FLSA COLLECTIVE PLAINTIFFS</u>**
*(Overtime Violations under the FLSA)*

104.    Garcia, on behalf of himself and the FLSA Collective Plaintiffs, repeats and realleges all prior allegations set forth above.

105.    Pursuant to the applicable provisions of the FLSA, Garcia and the FLSA Collective Plaintiffs were entitled to receive overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for all hours worked in excess of forty (40) per week.

106.    Garcia and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

107.    Throughout the relevant time period, Defendants knowingly failed to pay Garcia and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for each hour they worked in excess of forty (40) per week.

108.    As a result of Defendants' violations of the law and failure to pay Garcia and the FLSA Collective Plaintiffs the required overtime wages, Garcia and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

109.   As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Garcia and the FLSA Collective Plaintiffs are entitled to liquidated damages.

110.   Judgment should be entered in favor of Garcia and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of Garcia's and the FLSA Collective Plaintiffs' unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE CLASS MEMBERS

*(Overtime Violations under the NYLL)*

111.   Plaintiffs, individually and on behalf of the Class Members, repeat and reallege all prior allegations set forth above.

112.   Pursuant to the applicable provisions of the NYLL, Plaintiffs and the Class Members were entitled to receive overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for all hours worked in excess of forty (40) per week.

113.   Plaintiffs and the Class Members regularly worked in excess of forty (40) hours per week during their employment with Defendants.

114.   Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the Class Members overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the applicable minimum wage rate, whichever is greater, for each hour worked in excess of forty (40) hours per week.

115.   As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class Members the required overtime wages, Plaintiffs and the Class Members have been

damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

116. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the Class Members are entitled to liquidated damages in an amount equal to one hundred percent (100%) of unpaid wages.

117. Judgment should be entered in favor of Plaintiffs and the Class Members and against Defendants on the Second Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE CLASS MEMBERS**
*(Third Party Beneficiary Claim for Prevailing Wages)*

118. Plaintiffs, individually and on behalf of the Class Members, repeat and reallege all prior allegations set forth above.

119. Defendants were required under NYLL § 220-(3)(a) to pay their employees, including Plaintiffs and all other similarly situated employees, a "prevailing wage" that was specified in contracts entered by Corporate Defendants and various government instrumentalities of the City and State, or incorporated by explicit or implicit reference into such contracts.

120. Plaintiffs and all other similarly situated employees were persons covered by or the intended third-party beneficiaries of the contracts entered into by Corporate Defendants and various government instrumentalities of the City and State to perform public works.

121. In accordance with the terms and conditions of Corporate Defendants' contracts with the various government instrumentalities and the relevant provisions of the NYLL relating

to "prevailing wages" to be paid to employees of Corporate Defendants, Plaintiffs, and all other similarly situated employees should have been paid the prevailing wage and prevailing wage supplements for the work and labor Plaintiffs and similarly situated employees supplied in connection with and in furtherance of the work contemplated by such contracts.

122.  Defendants knowingly and willfully failed or refused to pay Plaintiffs and similarly situated employees the prevailing wage and prevailing wage supplements for regular and overtime hours of work in connection with the execution of Corporate Defendants' contracts with various government instrumentalities.

123.  Defendants' failure or refusal to pay Plaintiffs and similarly situated employees the prevailing wage and prevailing wage supplements constitute a material breach of the Corporate Defendants' contracts with various government instrumentalities.

124.  Pursuant to Defendants' contracts with the relevant government instrumentalities and the relevant provisions of the New York Labor Law relating to "prevailing wages" to be paid to employees working on public works projects, Defendants were obligated to ensure that Defendants' employees were compensated no less than the prevailing wages and supplements required by those contracts and under the New York Labor Law for each hour worked.

125.  By failing to ensure that Defendants' employees received the prevailing wages and supplements required under their contracts with the relevant government instrumentalities and the relevant provisions of New York Labor Law relating to "prevailing wages" to be paid to employees working on public works projects,

Defendants breached their contracts with the relevant government instrumentalities, of which contracts Plaintiffs and others similarly situated were intended beneficiaries.

126. Judgment should be entered in favor of Plaintiffs and Class Members and against Defendants on the Third Cause of Action for the prevailing wages they were due, together with attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE CLASS MEMBERS

*(Failure to Timely Pay Wages under the NYLL)*

127. Plaintiffs, individually and on behalf of the Class Members, repeat and reallege all prior allegations set forth above.

128. Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs and the Class Members were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

129. During the relevant time period, Defendants failed to timely pay Plaintiffs and the Class Members all their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

130. During the relevant time period, Defendants failed to pay Plaintiffs and the Class Members all wages earned, including overtime wages earned for hours worked in excess of forty (40) per week, in violation of NYLL § 191(1)(a)(i).

131. Due to Defendants' violation of NYLL § 191(1)(a)(i), Plaintiffs and the Class Members were denied the time value of their money in that they were unable to invest, earn interest on, or otherwise use the money they had earned and to which they were legally entitled.

132. As a result of Defendants' violations of the law and failure to pay Plaintiffs and the Class Members in accordance with NYLL § 191(1)(a)(i), Plaintiffs and the Class Members have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

133. Judgment should be entered in favor of Plaintiffs and the Class Members and against Defendants on the Fourth Cause of Action in the amount of their respective unpaid wages, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF INDIVIDUALLY, AND THE CLASS MEMBERS
*(Failure to Provide Payroll Notices under the NYLL)*

134. Plaintiffs, individually and on behalf of the Class Members, repeat and reallege all prior allegations set forth above.

135. Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class Members a notice containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; and other information required by NYLL § 195(1).

136. As Defendants failed to provide Plaintiffs and the Class Members with payroll notices as required by NYLL § 195(1), Plaintiffs and the Class Members are entitled to liquidated damages of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

137. Judgment should be entered in favor of Plaintiffs and the Class Members and against Defendants on the Fifth Cause of Action in the amount of $50.00 per day in which the

violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS INDIVIDUALLY, AND THE CLASS MEMBERS**
*(Failure to Provide Wage Statements under the NYLL)*

138. Plaintiffs, individually and on behalf of the Class Members, repeat and reallege all prior allegations set forth above.

139. Throughout the relevant time period, Defendants failed to furnish to Plaintiffs and the Class Members, with each wage payment, a statement listing: rate or rates of pay and basis thereof; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

140. As Defendants failed to provide Plaintiffs and the Class Members with wage statements as required by NYLL § 195(3), Plaintiffs and the Class Members are entitled to liquidated damages of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

141. Judgment should be entered in favor of Plaintiffs and the Class Members and against Defendants on the Sixth Cause of Action in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorneys' fees and costs.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF BUNAY**
*(Retaliation under the NYLL § 740)*

142. Plaintiffs repeat and reallege all prior allegations.

143. NYLL § 740 prohibits an employer from retaliating against an employee based on, *inter alia*, the employee's disclosure or threatened disclosure to a supervisor or public body of an activity, policy, or practice of the employer that the employee reasonably believes is in violation of a law, rule, or regulation, or the employee's objection to or refusal to participate in any such activity, policy, or practice.

144. In or around March 2018 and May 2019, Defendants suspended Bunay's employment for a period of approximately two (2) weeks, respectively, citing Bunay's unwillingness to comply with fraudulent company practices.

145. Defendants' conduct constitutes unlawful retaliation in violation of NYLL § 740.

146. As a result of Defendants' willful, wanton, and malicious violations of the law, Bunay has been damaged and is entitled to recover from Defendants compensatory and punitive damages, along with lost wages, front pay, lost benefits, liquidated damages, reasonable attorneys' fees, and costs.

147. Judgment should be entered in favor of Plaintiff and against Defendants on the Seventh Cause of Action for compensatory and punitive damages, along with all lost wages and front pay, lost benefits, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR AN EIGHTCAUSE OF ACTION
## ON BEHALF OF BUNAY, AND THE CLASS MEMBERS
*(Fraudulent Filing of Information Returns Under 26 U.S.C. § 7434)*

148. Plaintiffs repeat and reallege all prior allegations set forth above.

149. Throughout the relevant period, Defendants regularly paid Bunay part of his wage compensation by check with withholdings for federal, state, and local taxes, and part of

his wage compensation in separate "reimbursement" checks without any withholdings for federal, state, and local taxes.

150. Throughout the relevant period, Bunay had regular conversations with other of Defendants' employees, who told him that Defendants also paid a portion of their wages by check with withholdings for federal, state, and local taxes, and another portion of their wages in separate "reimbursement" checks without withholdings for federal, state, and local taxes..

151. Upon information and belief, Defendants regularly paid the Class Members part of their wages by check with withholdings for federal, state, and local taxes and part of their wages in separate "reimbursement" checks without any withholdings for federal, state, and local taxes.

152. Defendants provided Bunay with a copy of the IRS W-2 forms that Defendants filed with the IRS each calendar year, which only reflected some of Bunay's wages paid by check and excluded overtime wages paid as "reimbursement" checks.

153. Upon information and belief, Defendants also provided the Class Members with a copy of the IRS W-2 forms that Defendants filed with the IRS each calendar year, which only reflected some of the Class Members' wages paid by check and excluded overtime wages paid as "reimbursement" checks.

154. A Form W-2 is an information return as defined by 26 U.S.C. § 6724(d)(1).

155. Defendants were aware of their duty to accurately report to the IRS all wages paid to Bunay and the Class Members.

156. Defendants were aware that the W-2 Forms did not reflect wages paid in "reimbursement" checks to Bunay and the Class Members.

157. Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing IRS W-2 forms with false information regarding the wages to Bunay and the Class Members, thereby decreasing Defendants' tax liability.

158. As Defendants willfully filed fraudulent information returns in violation of 26 U.S.C. § 7434, Bunay and the Class Members are entitled to damages in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Bunay and the Class Members for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

159. Judgment should be entered in favor of Bunay and the Class Members and against Defendants on the Eight Cause of Action in an amount equal to the greater of $5,000.00 or the sum of any actual damages sustained by Bunay and the Class Members for each fraudulent information return, costs of the action, and reasonable attorneys' fees.

**WHEREFORE** Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and the Class Members, pray for relief as follows:

a)      on the First Cause of Action on behalf of Garcia and the FLSA Collective Plaintiffs for all overtime wages due to Garcia and the FLSA Collective Plaintiffs, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

b)      on the Second Cause of Action on behalf of Plaintiffs and the Class Members for all overtime wages due, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

c)      on the Third Cause of Action on behalf of Plaintiffs and the Class Members for all unpaid prevailing wages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

d)      on the Fourth Cause of Action on behalf of Plaintiffs and the Class Members for all wages due to Plaintiffs and the Class Members, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

e)      on the Fifth Cause of Action on behalf of Plaintiffs and the Class Members for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorney fees in an amount to be determined by this Court;

f)      on the Sixth Cause of Action on behalf Plaintiffs and the Class Members for liquidated damages in the amount of $250.00 per day in which the violation occurred, up to a maximum of $5,000.00 each, along with all reasonable attorney's fees in an amount to be determined by this Court;

g)      on the Seventh Cause of Action on behalf of Bunay for compensatory and punitive damages, along with all lost wages and front pay, lost benefits, liquidated damages, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

h)      on the Eighth Cause of Action on behalf on behalf of Bunay and the Class Members for damages in the amount equal to the greater of $5,000.00 for each fraudulent information return or the sum of any actual damages sustained by Bunay, along with reasonable attorneys' fees in an amount to be determined by this Court;

i)      Interest;

j)      Costs and disbursements; and

k)      Such other and further relief as is just and proper.

Dated:  New York, New York
        October 2, 2023

                                        KATZ MELINGER PLLC

                                        By: */s/ Katherine Morales*
                                        Katherine Morales, Esq.
                                        370 Lexington Avenue, Suite 1512
                                        New York, New York 10017
                                        Telephone: (212) 460-0047
                                        Facsimile: (212) 428-6811
                                        kymorales@katzmelinger.com
                                        *Attorneys for Plaintiffs*